IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY CAMPBELL, an individual
and YOUNG BLACK INVESTORS, LLC,
a Michigan limited liability company,

     Plaintiffs,

vs.

Case No. 2021-_____
Hon.  _____

CITY OF DETROIT, a Municipal Corporation,
DETROIT POLICE CHIEF JAMES WHITE, in
his official capacity, CITY OF MACOMB, a
Municipal Corporation,   H & B LAND, INC.,
a Michigan Corporation, ELITE TOWING, INC.,
a Michigan Corporation, ALONZO JONES, an
individual, BENJAMIN MCGUIRE, an
individual, CHARLES HILKERT, an individual,
RYAN AUTO SALES, INC., a Michigan corporation,
and JOHN DOE DEFENDANTS, in their individual capacities,

     Defendants.

_____/

COHEN, LERNER & RABINOVITZ, P.C.
By:  Aaron E. Silvenis  (P75889)
Attorneys for Plaintiff
26862 Woodward Avenue, Suite 200
Royal Oak, MI  48067
(248) 691-2200 / FAX (248) 691-2214
aaron.silvenis@cohenlerner.com
deanna.donahoo@cohenlerner.com

_____/

**<u>COMPLAINT</u>**

> There is no civil action arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court nor has any such action been previously filed and dismissed after being assigned to a Judge.
>
> _/s/   Aaron E. Silvenis_
> Aaron E. Silvenis   (P75889)

NOW COME Plaintiffs, Jeremy Campbell and Young Black Investors, LLC, by and through their attorneys, Cohen, Lerner & Rabinovitz, P.C., and states for its Complaint as follows:

## **PARTIES, VENUE AND JURISDICTION**

1. Plaintiff Jeremy Campbell ("**Plaintiff**" or "**Campbell**") is an individual residing and doing business within the Eastern District of Michigan.

2. Plaintiff Young Black Investors, LLC ("**Company**") is a Michigan limited liability company doing business in Wayne County, Michigan.

3. Plaintiff Campbell is an officer and member of Plaintiff Company (collectively "**Plaintiffs**") (Campbell and Plaintiff Company shall be referred to as "the Plaintiff or Plaintiffs").

4. Defendant City of Detroit ("**Defendant City**") is a municipal corporation within the Eastern District of Michigan. The Detroit Police Department ("**DPD**") is an agency operated by the Defendant City. DPD runs the Auto Theft Task Force for Defendant City.

5.      Defendant James White ("**White**") is the Police Chief of DPD, an agency of Defendant City and is sued in his official capacity.

6.      Defendant City of Macomb ("**Macomb**") is a municipal corporation located within the Eastern District of Michigan. Upon information and belief, the Macomb Auto Theft Task Force is an arm of Macomb's law enforcement division subject to the jurisdiction of this Court for the reasons set forth below.

7.      At all times relevant to the instant action, Defendant Alonzo Jones ("**Jones**") was employed by Defendant City as a police officer with DPD where he oversaw the Detroit Police Department Auction of seized and abandoned vehicles.

8.      Defendant H & B Land, Inc. ("**H&B**") is a Michigan corporation doing business in Wayne County, Michigan.

9.      Defendant Elite Towing, Inc. ("**Elite**") is a Michigan corporation doing business within the Eastern District of Michigan.

10.     Collectively H & B and Elite are engaged by the Defendant City as tow truck drivers and operators of the lots that vehicles are stored on after they are towed.

11.     Defendant Benjamin McGuire ("**McGuire**") is the President of H & B and a shareholder of Elite doing business within the Eastern District of Michigan.

12.     Defendant Charles Hilkert ("**Hilkert**") is a director and shareholder of both H & B and Elite doing business within the Eastern District of Michigan.

13.     Defendant Ryan Auto Sales, Inc. ("**Ryan Auto**"), is a Michigan corporation doing business within the Eastern District of Michigan and otherwise properly subject to the jurisdiction of this Court for the reasons herein.

14.     This Court has jurisdiction under 28 U.S.C. §§1331 and 1343(3) and (4).  The relief sought is authorized by the United States Constitution and by 42 U.S.C. §1983.

15.     This Court has supplemental jurisdiction over the State Law claims under 28 U.S.C. §1367.

16.     Declaratory relief is authorized under 28 U.S.C. §§2201 and 2202.

17.     Venue is proper in this Court under 28 U.S.C. §1391(b) because the incidents, events and occurrences giving rise to this action occurred in the Eastern District of Michigan and because all parties are domiciled in the Eastern District.

## FACTUAL BACKGROUND

### PLAINTIFF'S VEHICLE IS TAKEN FROM A REPAIR SHOP BY THE DEFENDANTS

18.     On or about May 26, 2020, Plaintiff purchased a 2019 Jeep Grand Cherokee, VIN# 1C4RJFAG9KC830125 ("the Vehicle") from an auction.

19.     After purchasing the Vehicle, Plaintiff had the Vehicle taken to ABT Automotive, a non-party, with its business in Clinton Township, Michigan for repairs and other work on the Vehicle.

20.     On or about July 1, 2020, Defendant Macomb through its Commercial Auto Theft Unit in connection with Defendant City through DPD Auto Theft Task Force entered the premises where Plaintiff's vehicle was being repaired and seized Plaintiff's vehicle along with several other vehicles.   (**Ex A**).

21.     Upon information and belief, the raid itself was supposedly prompted by concerns that there were stolen vehicles at the location or that the vehicles contained stolen parts thereby necessitating the raid and execution on the premises.

### PLAINTIFF ATTEMPTS TO RECOVER HIS VEHICLE FROM DEFENDANTS BUT IS DENIED ACCESS TO INFORMATION ABOUT HIS VEHICLE WHILE IT IS IN THE CUSTODY AND CONTROL OF DEFENDANTS

22.     Plaintiff's Vehicle was taken from ABT Automotive, towed by Defendant Elite and, upon information and belief, taken to Elite's lot, Defendant H & B.   (**Ex A**).

23.     Upon finding out that his vehicle had been taken from the repair shop, ABT Automotive, Plaintiff made inquiry as to the whereabouts of his Vehicle and when and how he could retrieve it from Defendants' custody.

24.     Specifically, shortly after the raid occurred, Plaintiff spoke with an individual named Brent who was a Detective with DPD Auto Theft Task Force.

25.     Plaintiff appeared at the DPD Auto Theft Task Force location with documentation establishing his ownership of the Vehicle in an attempt to have the

Vehicle released from the custody of Defendants.

26.     However, Plaintiff's attempts to recover his vehicle were unsuccessful. Plaintiff was unable to speak with Detective Brent when he arrived at the offices of DPD Commercial Auto Theft Task Force.

27.     Subsequently, Plaintiff made a follow-up visit to the DPD Auto Theft Task Force offices and supplied them with additional documentation to secure the release of his vehicle.   Plaintiff requested that Defendant contact him with information to secure the immediate return of his vehicle as soon as possible.

28.     Staff at the Auto Theft Task Force Unit of Defendant City assured Plaintiff that the materials would be passed onto Detective Brent and that a representative would be contacting him with the information to facilitate the release and return of the Vehicle.

29.     Despite these promises from employees of DPD, including representatives from its Auto Theft Task Force Unit, Plaintiff never received any further contact from Defendants or any additional information regarding his vehicle and how he could secure its release and return.

**DEFENDANTS SELL PLAINTIFF'S VEHICLE TO A THIRD PARTY WITHOUT PROVIDING PLAINTIFF NOTICE OR GIVING PLAINTIFF AN OPPORTUNITY TO RECOVER HIS VEHICLE**

30.     Several months elapsed and it was only after repeated telephone calls and requests for information that Plaintiff finally learned, unbeknownst to him, that

his vehicle had already been "sold" by Defendants purportedly at a Detroit Police Vehicle Auction that took place on the lot of Defendant H & B Land, on or about November 23, 2020.

31.     At that time, Defendant Jones was employed by Defendant City as a DPD police officer responsible for overseeing the Detroit Police Vehicle Auction.

32.     Jones recently plead guilty to bribery in connection with his duties overseeing the auction and his taking of bribes in exchange for preparing fraudulent paperwork that effectively and unlawfully transferred ownership of the vehicle in DPD custody to third parties.   (See **Ex B and Ex C**).   Upon information and belief, Defendant Jones was a material participant in the unlawful dispossession of Plaintiff's vehicle and corresponding failure to provide Plaintiff with the required notice and opportunity to retrieve his vehicle during the time it was in the possession, custody and control of the named Defendants.

33.     MCL 257.252d requires police and other parties to adhere to strict guidelines if a vehicle is taken into custody on the alleged basis of a crime or kept for evidence in association with an alleged crime.

34.     MCL 257.252 also requires that the companies responsible for the towing and storage of the Vehicle maintain records concerning the Vehicle's whereabouts and its ultimate disposition during the time that the investigation is ongoing.

35.     MCL 257.252 requires that notice be given to the lawful owners of the vehicles that are seized by the police department and held at their towing affiliates in order to ensure the owners' due process and constitutional rights are not violated by facilitating the ability of the owners to secure the return of their vehicles in a timely manner.

36.     MCL 257.252g also requires that if notices to the owners of the vehicles are given and no response is forthcoming and the vehicles continue to remain in custody notwithstanding the notices, that the vehicles may be sold at public auction after the passing of a specified time period and upon sending additional notices to the owners of the vehicles to avoid impinging upon their constitutional and due process rights.

37.     Upon information and belief, Defendants, and each of them, failed to comply with their obligations to notify Plaintiff regarding the whereabouts and disposition of his vehicle and how he could secure its return.   This was done despite Plaintiff's multiple visits to Task Force offices and repeated requests for information.

38.     Instead, Plaintiff's Vehicle, upon information and belief, was sold at the November 23, 2020 police auction at Defendant H & B Land's location to Defendant Ryan Auto.

39.     Critically, MCL 257.252g requires all vehicles scheduled to be sold at an auto auction to be identified on a list that is publicly available in advance of the date the sale is scheduled to occur.

40.     Defendants failed to comply with the requirements, failed to ensure that the Vehicle was listed on the public auction auto sale site and otherwise failed to take the necessary actions to alert Plaintiff of the fact that his vehicle was going to be put up for sale that day, even though the Vehicle was not technically abandoned and there was no legal basis for it to be sold.

41.     Incredibly, and despite Plaintiff's requests for information from Defendants, upon information and belief, Plaintiff did not learn of the November 23, 2020 "auction" on the "sale" of his vehicle until August 2021 after Plaintiff telephoned Detective Paul Collins from the Macomb Commercial Auto Theft Unit who advised that his vehicle had been sold.

42.     At this point, Detective Collins also insinuated that in his opinion, the raid on the repair shop which precipitated the seizure of Plaintiff's vehicle from ABT Automotive was itself improperly executed without basis.

43.     Upon information and belief, these revelations from Detective Collins suggest that Plaintiff's vehicle was sold on November 23, 2020 even though it was not listed as being for sale that day on the listing of vehicles up for sale at the DPD Vehicle Auction as required by Michigan statute.   (**Ex D**).

44.     Curiously, even though the Vehicle had been sold, the Michigan Secretary of State issued a Certificate of Title to Plaintiff's company dated December 9, 2020 reaffirming Plaintiff's record ownership of the Vehicle.   (**Ex E**).

45.     It is unclear how Plaintiff, who was the certified owner of the Vehicle, was never notified of the sale of the Vehicle nor was the Secretary of State able to document a subsequent transaction that occurred before the issuance of competing title to a party not listed as the owner.

46.     Plaintiff was also advised that on or about February 3, 2021, Defendant Ryan Auto sold the Vehicle to a unknown third-party Defendant who has since asserted ownership of the Vehicle and, to do so, upon information and belief, engaged in forgery and other improprieties to claim ownership.

47.     Upon information and belief, Defendant Jones' recent plea of guilty to bribery charges in connection with Operation Northern Hook sheds light on how the entire scheme was orchestrated by Defendants to Plaintiff's detriment.   (**Ex C**).

## OPERATION NORTHERN HOOK

48.     Defendant Jones was recently charged with bribery and other wrongdoing in connection with an ongoing FBI investigation into Defendant City, DPD and the local towing industry.   (**Ex B**).

49.     Specifically, Defendant Jones was named and plead guilty to charges of bribery in an Information filing submitted by the United States Attorney in the

Eastern District wherein it was alleged that Jones, as an officer of DPD with Defendant City that was tasked with overseeing the police vehicle auction, accepted cash bribes in exchange for falsifying documents that illegally transferred ownership of vehicles in police custody to third parties in violation of Michigan Law and in contravention of the ability of individuals such as Plaintiff, whose vehicles were in possession of the DPD from being able to recover them.   (See **Ex B**, November 3, 2021 Information filing, *USA v D-1 Alonzo Jones*, Case 2:21-cr-20678; and **Ex C**, Plea Agreement).

50.     The unlawful actions and omissions of the Defendants, including Defendant City, Defendant Jones and other unnamed Defendants whose identities have not yet been ascertained, are the subject of "Operation Northern Hook" an ongoing FBI investigation of public corruption between Defendant City government officials, DPD and the Detroit towing industry.

51.     A primary focus of the FBI's investigation is uncovering how Defendants effectively stole vehicles from private citizens while the vehicles were in the custody of Defendant City, DPD and Defendant towing companies.   These individuals and Plaintiff were unlawfully deprived their property without notice or due process in violation of their constitutional rights.

52.     Here, upon information and belief, the wrongful acts and omissions perpetrated by the Defendants, and each of them, resulted in the unlawful disposition

of Plaintiff's vehicle while it was in Defendant's custody without notice to Plaintiff. Plaintiff was prohibited from recovering his vehicle during the time that it was in the possession of the Defendants and instead was stonewalled each time he asked for information about how he could get his vehicle back.   Ultimately, the vehicle was unlawfully sold without notice in violation of Plaintiff's constitutional rights and proximately caused the damages alleged by Plaintiff in this litigation arising out of the wrongful taking and conversion of his motor vehicle at a time when it was supposed to be maintained by the Defendants who were responsible for overseeing the vehicle at the time it was in their custody.

53.     Upon information and belief, instead of facilitating the return of Plaintiff's vehicle, the Defendants, and each of them, engaged in an unlawful scheme to permanently dispossess Plaintiff of his vehicle without notice, in violation of Michigan Law and ultimately foreclosing the ability of Plaintiff to recover his vehicle from the named Defendants herein.

54.     The acts and omissions of the Defendants were also in violation of the DPD "Towing/Impound Procedures" Manual Directive ("**DPD Towing Directive**") implemented by Defendant City. (**Ex. F**). The DPD Towing Directive "set[s] forth the rules and guidelines pertaining to the impoundment of vehicles…" (*Id*. at § 204.4-1). Specifically, the DPD Towing Directive imposes certain documentary and recordkeeping requirements for officers that must be prepared for each vehicle taken

into the custody or possession of DPD. (*Id*. at § 204.4.-7.2). In addition, DPD officers are also required to notify other Units and Departments of Defendant City of the fact that the vehicle is in DPD custody and provide additional details about the circumstances for the impound. (*Id*., § 204.4-7.2). The purpose of these requirements is to ensure that vehicles are correctly entered into applicable departmental and governmental databases in order to notify the record owner of the vehicle and expeditiously facilitate the return of the vehicle.

55.     Here, the Defendants failed to comply with the recordkeeping and reporting requirements imposed by the DPD Towing Directive and failed to notify other departments and units of the fact that the vehicle was in DPD custody. As a result, the vehicle information was not entered into the necessary databases, preventing its return to Plaintiff and allowing the Defendants, and each of them, to cloak the outright theft of Plaintiff's vehicle under cover of law enforcement.

## COUNT I
## COMMON LAW CONVERSION

56.     Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through fifty-six (56) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

57.     Plaintiff was the lawful owner of a 2019 Jeep Grand Cherokee, VIN# 1C4RJFAG9KC830125.

58.      Defendants, and each of them, upon information and belief, through the acts and omissions alleged herein, unlawfully exercised dominion over and participated in the dispossession, misdelivery, refusal to surrender, refusal to notify and unlawful disposition of Plaintiffs' property to a third party.

59.      The value of Plaintiff's Vehicle at the time of the conversion exceeded $25,000.00.

60.      Plaintiff made repeated attempts to secure information about the status and location of his vehicle and demanded its return from Defendants.

61.      Recently, Defendant Jones, an agent of Defendant City as an Officer of DPD, pled guilty to bribery in connection with his role overseeing the police vehicle auction and his receipt of cash payments as bribes in exchange for him preparing falsified documents which transferred ownership of vehicles like the one owned by Plaintiff to third party co-conspirators, without notifying the owners that the Vehicle would be offered for sale at a public auction

62.      As a result of Defendants' conversion, Plaintiff has been damaged in excess of $25,000.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a Judgment in their favor and against the Defendants, and each of them, in whatever amount in excess of $25,000 to which they may be found entitled, together with costs, interest and attorney fees in treble damages.

## COUNT II
## STATUTORY CONVERSION
## (CITY DEFENDANTS AND TOWING DEFENDANTS)

63.     Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through sixty-two (62) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

64.     At all times relevant to the instant action, Plaintiff was the legal and equitable owner of the Vehicle at issue, 2019 Jeep Grand Cherokee, VIN# 1C4RJFAG9KC830125.

65.     Upon information and belief, Defendant City, Defendant Jones and the Towing Defendants, and each of them, intentionally and wrongfully dispossessed Plaintiff's vehicle while it was in their custody without notice to Plaintiff.

66.     Upon information and belief, these machinations were orchestrated in part, by Defendant Jones, as an agent for Defendant City in his capacity as a DPD officer overseeing the Vehicle Auction and forfeiture post.

67.     Defendant Jones recently pled guilty to charges of bribery for his role in accepting cash bribes in exchange for his preparation of fraudulent paperwork that effectively transferred ownership of vehicles that were in the possession and custody of Defendant City to third parties without notice to the lawful owners of those vehicles, such as Plaintiff. (See **Ex. B and Ex. C**).

68.     Inasmuch as Defendant Jones converted the property in exchange for cash bribes, the conversion was to his own use under Statute.

69.     Based on Defendant Jones' plea of guilty to bribery and the involvement of the other named Defendants in the scheme surrounding the Detroit towing scandal at issue in Operation Northern Hook, Plaintiff's personal property was converted to purposes personal to the interests of the named Defendants.

70.     As a result of the conversion of his vehicle and its unlawful sale to a third party without notice and in violation of Michigan Statute, Plaintiff has been damaged.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a Judgment in their favor and against the Defendants, and each of them, in whatever amount in excess of $25,000 to which they may be found entitled, together with costs, interest and attorney fees in treble damages under MCL 600.2919(A)(1)(a).

## COUNT III
## MONELL LIABILITY FOR VIOLATIONS OF THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983 (DEFENDANTS CITY OF DETROIT, CHIEF WHITE IN HIS OFFICIAL CAPACITY AND ALONZO JONES, IN HIS INDIVIDUAL CAPACITY)

71.     Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through seventy (70) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

72.     Plaintiff had certain constitutionally protected rights that were violated by the named Defendants including the right to liberty protected in the substantive component of the due process clause of the Fifth and Fourteenth Amendments, as well as the Fourth Amendment right to be free of unreasonable seizures and the Fifth Amendment restrictions on takings of property.

73.     Upon information and belief, Plaintiff also had his constitutional rights violated by Defendant City, through DPD and its corresponding failure to establish adequate policies, failure to train officers and policy and custom of acquiescence regarding the oversight of vehicles in the possession, custody and/or control of DPD. In addition, Defendant City, through DPD and Defendant Jones , also engaged in other unlawful actions in furtherance of a corrupt scheme with the Towing Defendants in a concerted effort to deprive individuals such as Plaintiff of their constitutional rights and their personal property.

74.     Corruption concerns regarding DPD have been knowable and known to Defendant City at all relevant times herein.

75.     The Detroit Police Defendants, upon information and belief, failed to adequately train and oversee its officers and educate them as to the appropriate protocol governing the notice required to be afforded to individuals who had their vehicles seized and taken into the custody of the police Defendants and/or the towing Defendants at the direction of the police Defendants.

76.     The sale of Plaintiff's vehicle by the named Defendants in violation of Michigan Law and Statute and corresponding falsification of ownership records associated with the scandal perpetrated by Defendants was the direct and proximate cause of the loss of Plaintiff's personal property and the corresponding deprivation of Plaintiff's constitutional rights described above.

77.     Upon information and belief, Defendant City, though its agency DPD, and its Chief, Defendant White, acting under cover of State Law, authorized, tolerated, ratified, permitted or acquiesced in the creation of policies, practices and customs establishing a *de facto* policy of deliberate indifference to individuals such as Plaintiffs and their personal property interests.

78.     As a direct and proximate result of these policies, practices and customs as well as Defendants' ongoing acquiescence to and/or refusal to remediate the issues, Plaintiff was deprived of his constitutionally protected rights in the manner and form described above.

WHEREFORE, Plaintiffs request that this Honorable Court enter Judgment against Defendants, and each of them, in an amount consistent with the damages sustained, along with costs, interest and attorney fees, as well as punitive and exemplary damages as may be proven at Trial, interest on all sums awarded to Plaintiff from the date of the events and/or losses, an award of Plaintiff's reasonable

attorney fees and costs of this action, pursuant to 42 U.S.C. §1988 and any other applicable law and grant any further and other relief the Court deems just and proper.

## COUNT IV
## CONSPIRACY
## (ALL DEFENDANTS)

79.     Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through seventy-eight (78) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

80.     Upon information and belief, Defendants, and each of them, illegally, maliciously and wrongfully conspired with one another with the intent to and for the illegal purpose of converting Plaintiff's property.

81.     Upon information and belief, Defendants, and each of them, conspired to unjustly enrich themselves by causing the permanent dispossession of Plaintiff's vehicle.

82.     Upon information and belief, this conspiracy resulted in the illegal, unlawful and tortious activity of conversion.

83.     As a result of the conspiracy and Defendants' illegal, wrongful and tortious acts, Plaintiff has sustained damages in excess of $25,000.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a Judgment in their favor and against the Defendants, and each of them, in whatever amount in excess of $25,000 to which they may be found entitled, together with costs, interest and attorney fees in treble damages under MCL 600.2919(A)(1)(a).

## COUNT V
## CLAIM AND DELIVERY

84.     Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through eighty-three (83) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

85.     Plaintiff is the lawful owner of the Vehicle (2019 Jeep Grand Cherokee, VIN# 1C4RJFAG9KC830125).

86.     A Title Certificate evidencing Plaintiff's lawful ownership of the Vehicle at issue is attached hereto as **Ex E**.

87.     Plaintiff's vehicle was taken into the custody of Defendant City of Detroit Police Department.   At that time, upon information and belief, Defendant Jones, as an agent of Defendant City, and in connection with the named Towing Defendants, caused Plaintiff's vehicle to be sold to a third party without notice to Plaintiff or an opportunity for him to recover his car.

88.     Plaintiff made numerous inquiries and appeared at DPD offices and telephoned Detectives from DPD and Macomb on numerous occasions in an attempt to facilitate the return of the Vehicle which was being held.

89.     Ultimately, and unbeknownst to Plaintiff, upon information and belief, Defendants sold the Vehicle without notice to Plaintiff and in violation of Michigan Statute governing the dispossession of a vehicle in these types of circumstances.

90.     Plaintiff is entitled to possession of the Vehicle.

91.     Despite Plaintiff's repeated requests, Defendants have refused to deliver the Vehicle to Plaintiff.

92.     Upon information and belief, Defendants compounded the unlawful scheme against Plaintiff by selling the Vehicle or otherwise executing fraudulent documentation that effectively transferred ownership of Plaintiff's vehicle to third parties without notice to Plaintiff, and in violation of Michigan's statutory ordinances governing the dispossession of vehicles like Plaintiff's.

93.     Plaintiff has been damaged because of the dispossession of his vehicle proximately caused by Defendants.

WHEREFORE, Plaintiffs request this Honorable Court enter an Order granting Plaintiff a Judgment for the value of the Vehicle and award Plaintiffs other further interim and final relief, including money damages, costs and attorney fees as justice and equity require.

## COUNT VI
## <u>DECLARATORY JUDGMENT</u>

94.     Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through ninety-three (93) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

95.     Under MCR 2.605, this Court is authorized to issue a Declaratory Judgment adjudicating the rights of the parties in a pending action or controversy.

96.     Based on the facts and circumstances alleged herein, Plaintiffs request a Declaratory Judgment and finding as follows:

   a.   That Defendant City, through DPD, failed to follow statutory protocol and other requirements governing the protocol and information that is to be provided to owners of vehicles in the possession of the department and/or its agents in the manner and form alleged herein;

   b.   That Defendant City violated Michigan statute by causing Plaintiff's vehicle to be sold unlawfully at a police auction by failing to follow the requirements for selling vehicles at a police auction, failing to give Plaintiff notice of the pending sale and failing to post the Vehicle on the police auction list on the date of the sale;

22

    c. That Defendant City, Defendant Jones, Defendant Elite, Defendant H & B Land and Defendant Ryan Auto are all joint and severally liable for the unlawful dispossession and conversion of Plaintiff's vehicle; and

    d. That as a result of the unlawful conduct perpetrated by the Defendants, Plaintiff has been damaged.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a Declaratory Judgment in the manner and form above against the Defendants, and each of them, and that Plaintiff be awarded damages in excess of $25,000 to which it may be found entitled, together with costs, interest and attorney fees.

## COUNT VII
## FRAUD

97. Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through ninety-six (96) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

98. Upon information and belief, Defendant City, through DPD and its agents including Defendant Jones, Defendant White and in association with representatives of Defendant H & B Land and Defendant Elite Towing made false representations of material fact to Plaintiff regarding the location, disposition and other whereabouts of the Vehicle as set forth in the preceding paragraphs.

23

99.     These representations were false when made.

100.    Upon information and belief, Defendants, and each of them, knew that the representations were false when made or made them recklessly without knowledge of the truth of the statements.

101.    Defendants, and each of them, intended for Plaintiff to rely on the representations.

102.    Plaintiff relied on Defendants' false representations.

103.    As a result of Defendants' fraudulent misrepresentations, Plaintiff has suffered substantial economic losses.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a Judgment in their favor and against the Defendants, and each of them, in whatever amount in excess of $25,000 to which it may be found entitled, together with costs, interest and attorney fees.

## COUNT VIII
## UNJUST ENRICHMENT

104.    Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through one hundred three (103) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

105.     Upon information and belief, Defendants have been unjustly enriched through the unlawful seizure and illegal sale of Plaintiff's vehicle to a third party without providing the required notice to Plaintiff, failing to apprise Plaintiff of the circumstances and/or otherwise in violation of Michigan's Statute governing the custody and disposition of vehicles like Plaintiffs in these circumstances.

106.     Upon information and belief, through Defendants' misdirection and unlawful sale of Plaintiff's Vehicle to a third party, who compensated Defendants for that vehicle, Defendants have been unjustly enriched for their wrongful acts.

107.     Plaintiff has clean hands.

108.     Defendants' wrongful acts necessitate disgorgement of the benefits Defendants reaped at Plaintiff's detriment.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a Judgment in their favor and against the Defendants, and each of them, in whatever amount in excess of $25,000 to which it may be found entitled, together with costs, interest and attorney fees.

## COUNT IX
## NEGLIGENCE

109.     Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through one hundred eight (108) of this

Complaint as though more fully stated herein, paragraph by paragraph and word for word.

110.    Defendants, and each of them, owed certain duties to Plaintiff as the parties responsible for overseeing the possession and custody of Plaintiff's vehicle, which were heightened due to the circumstances that Plaintiff's vehicle came into Defendants' possession.

111.    Michigan Statute requires custodians of seized vehicles to comply with certain strictures in the types at issue herein.

112.    The acts and/or omissions of Defendants, and each of them, described herein, breached duties owed to Plaintiffs and violated Michigan Statute.

113.    As a result of the negligent acts and/or omissions of the Defendants, and each of them set forth herein, Plaintiff has been damaged.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a Judgment in their favor and against the Defendants, and each of them, in whatever amount in excess of $25,000 to which it may be found entitled, together with costs, interest and attorney fees.

## COUNT X
## CONCERT OF ACTION

114.    Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through one hundred thirteen (113) of this

Complaint as though more fully stated herein, paragraph by paragraph and word for word.

115.     Defendant City, through DPD and its officers, including Defendant Jones and others as well as the named towing Defendants H & B Land and Elite Towing, owed certain duties to Plaintiff under Michigan law and statute.  Despite this, and Defendants upon information and belief, and each of them, agreed in bad faith to proceed with the unlawful sale of Plaintiff's vehicle in derogation of Plaintiff's property interests and at significant financial costs to Plaintiff.

116.     Defendant H & B Land and Defendant Elite Towing, through failing to follow Michigan statute protocols and through other acts and/or omissions, knowingly assisted Defendant City of Detroit and Defendant Jones in perpetrating this scheme to the detriment of Plaintiff.

117.     Plaintiff has been damaged as a result of Defendants' actions.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a Judgment in their favor and against the Defendants, and each of them, in whatever amount in excess of $25,000 to which it may be found entitled, together with costs, interest and attorney fees.

## COUNT XI
## <u>AIDING AND ABETTING</u>

118.     Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through one hundred seventeen (117) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

119.     Upon information and belief, Defendant City, Defendant Jones, Defendant H & B, Defendant Elite and Defendant Ryan Auto acted pursuant to an unlawful common design to tortiously interfere with Plaintiff's property interests and deprive Plaintiff of his vehicle.

120.     Upon information and belief, the named Defendants, and potentially additional John Doe Defendants, unknown at this time, operated pursuant to a common scheme that involved an underlying illegal and tortious course of conduct, the conversion of Plaintiff's property.

121.     The Defendants' conduct was the proximate cause of the damages incurred by Plaintiff as set forth herein.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a Judgment in their favor and against the Defendants, and each of them, in whatever amount in excess of $25,000 to which it may be found entitled, together with costs, interest and attorney fees.

## COUNT XII
## <u>NUISANCE</u>

122.     Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through one hundred twenty-one (121) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

123.     Upon information and belief, the Defendants, and each of them, through the unlawful concerted actions alleged herein, engaged in a systemic and orchestrated scheme to deprive Plaintiff and others of their vehicles and leave them with minimal recourse to recover their interests.

124.     Upon information and belief, Defendant City, aided and abetted by Defendant Jones, Defendant Elite, Defendant H & B, Defendant Ryan Auto and the additional towing Defendants named herein and for the reasons stated above, engaged in a common scheme to perpetrate unlawful actions like those against Plaintiff and others who have had their cars unlawfully dispossessed.

125.     Defendants are not entitled to governmental immunity from the nuisance for the reasons set forth herein.

126.     But for the public nuisance carried on and perpetrated amongst and between the Defendants, and each of them, Plaintiff has been damaged.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a Judgment in their favor and against the Defendants, and each of them, in whatever amount in excess of $25,000 to which it may be found entitled, together with costs, interest and attorney fees.

## COUNT XIII
## <u>DECLARATORY JUDGMENT</u>
## <u>MCL 257.252e and (4) VIOLATE THE FIFTH AMENDMENT TAKINGS CLAUSE</u>

127.    Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in paragraphs one (1) through one hundred twenty-six (126) of this Complaint as though more fully stated herein, paragraph by paragraph and word for word.

128.    The Fifth Amendment Takings Clause provides that no private property shall be taken for public use without just compensation.

129.    Towing a vehicle constitutes a taking.   *Brite Financial Services, LLC v Bobby's Towing Serving, LLC,* 461 F. Supp. 3d 549, 558 (ED Mich 2020).

130.    Upon information and belief, the unlawful towing and prolonged storage of Plaintiff's vehicle coupled with Defendants' failure to notify Plaintiff or advise him of the whereabouts and disposition of his vehicle and Defendants' unlawful sale of Plaintiff's vehicle to a third party in violation of Michigan Statute amounts to an unjust taking of Plaintiff's private property for public use.

131.     Upon information and belief, because Defendants violated Michigan Statute and were unjustly enriched by the unlawful sale of Plaintiff's vehicle to a third party at a sham police auction without notice to Plaintiff, the conduct of the Defendants does not constitute lawful acquisition of property by means other than eminent domain.

132.     The aforecited statutes, MCL 257.252e(2) and (4), have created a scheme to where victims such as Plaintiffs are prevented from seeking expeditious, equitable and just recovery of their property or alternatively prompt compensation for the property at issue.

133.     The statutory limits in MCL 257.252e and its exclusive remedies clause seemingly restricts the ability of individuals that are unlawfully dispossessed of their property from being able to secure adequate recovery and just compensation pursuant to the Fifth Amendment Takings Clause.

134.     Because MCL 257.252e and its exclusive remedy provision deprives affected individuals, including Plaintiff, from securing just compensation in connection with the taking of their personal property for public use, the Statute is unconstitutional.

135.     MCL 257.252e also violates the Fourteenth Amendment Due Process Clause because it unconstitutionally restricts access of aggrieved parties to the Courts.

31

136.     Recently, this Court found certain components of MCL 257.252d(3)(b) to be unconstitutional.   Specifically, this Court held that the seven-day period for vehicle information to be entered into the LEIN System unconstitutionally infringed on the rights of private citizens. See *Brite Fin. Servs., supra* at 561-562.

137.     Upon information and belief, Defendants, and each of them, violated the statutory notice protocol in MCL 257.252.   In addition, Defendant City, through its officers at DPD, including Defendant Jones, engaged in additional unlawful actions that fundamentally interfered with Plaintiff's constitutional rights causing damage to Plaintiff.

WHEREFORE, Plaintiffs requests this Honorable Court enter a Declaratory Judgment finding that MCL 257.252e(2)(4) and MCL 257.252e(4) violate the Fifth Amendment Takings Clause.   Plaintiffs further pray that this Court enter a Declaratory Judgment holding that the exclusive remedy provisions in the towing statute violate the Fourteenth Amendment Due Process Clause.   Finally, Plaintiffs request that this Honorable Court enter a Declaratory Judgment finding that

Plaintiffs have standing for purposes of challenging the statute in the manner and form herein.

Respectfully submitted,

_/s/   Aaron E. Silvenis_
COHEN, LERNER & RABINOVITZ, P.C.
By:    Aaron E. Silvenis   (P75889)
Attorneys for Plaintiff
26862 Woodward Avenue, Suite 200
Royal Oak, MI 48067
(248) 691-2200/(248) 691-2214 Fax

Dated:   December 22, 2021